

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

June 12, 1958

Hon. Lloyd G. Rust, Jr.        Opinion No. WW-445
County Attorney
Wharton County               Re: Maximum pay of judges and
Wharton, Texas                   clerks of general and spe-
                                   cial elections.

Dear Mr. Rust:

        You have requested an opinion on the following question:

        What is the maximum pay of judges and clerks of general and special elections that can be set by the commissioners court for five hours of work and for a day consisting of ten hours work?

        The question must be broken down into election officers serving at polling places where paper ballots are used and those serving at polling places where voting machines are used. We shall discuss first the pay of officers where paper ballots are used.

        Article 3.08 of Vernon's Texas Election Code, which is based on former Article 2943 of the Revised Civil Statutes, reads as follows:

        "The pay of judges and clerks of general and special elections shall be determined by the Commissioners Court of the county where such services are rendered, and in primary elections by the County Executive Committee of the party conducting such primary election, but same shall not exceed Ten Dollars ($10) a day for each judge or clerk, nor exceed One Dollar ($1) per hour each for any time in excess of a day's work as herein defined. * * * Ten (10) working hours shall be considered a day within the meaning of this Article. * * *"

        Article 3.02 of the Election Code, based on former Article 2938, R.C.S., contains the following provision:

"* * * Provided, that in all elections held under the provisions of this title, other than general elections, local option elections and primary elections, the officers to be appointed by the Commissioners Court to hold said elections shall be a presiding judge, and assistant judge and two (2) clerks, whose compensation shall be Five Dollars ($5) per day, and Two Dollars ($2) extra to the presiding judge for making return of the election."

The Election Code was passed by the 52nd Legislature on May 30, 1951, and was approved on June 28, 1951, to become effective on January 1, 1952.

The 52nd Legislature also passed an amendment to Article 2943, Revised Civil Statutes, which set the maximum compensation for judges and clerks in general and special elections at not to exceed $8.00 a day consisting of ten working hours. This amendatory act was passed on May 14, 1951, and was approved on June 2, 1951, to become effective immediately. As amended, the pertinent portion of this statute is in identical language to that of Article 3.08 of the Election Code except that the maximum rate is set at $8.00 instead of $10.00 and it does not contain the provision relating to primary elections.

Prior to 1951, Article 2943, R.C.S., had provided for pay in general and special elections at the rate of $5.00 a day. Article 2938 had provided for pay of $2.00 per day for the special elections to which it applied. It is seen that both rates were changed by the 1951 enactments and that there is a conflict between the three provisions enacted in 1951.

If we had only to consider these three 1951 provisions as set out above, the Election Code provisions would control over the act amending Article 2943, having been enacted subsequent to the amendment of Article 2943. Townsend v. Terrell, 118 Tex. 463, 16 S.W.2d 1063 (1929); Wright v. Broeter, 145 Tex. 142, 196 S.W.2d 82 (1946); 39 Tex.Jur. 147, Statutes, Sec. 79. The only question would be to determine whether Articles 3.02 and 3.08 are in irreconcilable conflict with respect to the special elections to which Article 3.02 applies, and, if so, which statute should be given controlling effect. If this were the question, we are of the opinion that Article 3.08 would control the rate of pay both in general elections and in all special elections, it being later in position in the Election Code. Stevens v. State, 70 Tex.Crim. 565, 159 S.W. 505 (1913); Att'y Gen. Ops. O-3682 and 3931 (1941). However, Article 14.11 of the Election Code contains this further provision:

"All laws and parts of laws in conflict here-
with are repealed in so far as such laws are in
actual conflict with the provisions of this code,
and in case of such conflict the provisions of
this code shall control and be effective. However,
nothing in this Act shall be construed to nullify
or repeal any Act of the Legislature passed at the
Regular Session of the Fifty-second Legislature."
(Emphasis supplied throughout.)

Thus, the Election Code changes the prior law but it
also saves from repeal the conflicting act amending Article
2943. To complicate the matter still further, Section 2 of
the bill enacting the Election Code (H.B. 6, Ch. 492, Acts 52nd
Leg.) reads as follows:

"That all elections and all laws relating to
suffrage and parties, as found in Title 50 of the
Revised Civil Statutes of Texas of 1925, and all
amendments thereto, be and the same are hereby
repealed, provided, however, that nothing in this
Act shall be construed as repealing or in any way
affecting the legality of any penal provision of
the existing law; and this Act shall be construed
to be an independent Act of the Legislature enacted
under the caption hereof, and the Sections contained
in this Act, as revised, rewritten, changed, combined
and codified shall be the governing law of this State."

Article 2943 was a part of Title 50 of the Revised
Civil Statutes. By the language of Section 2 of H.B. 6, this
article and all amendments thereto were expressly repealed.
Taken literally, the repeal would include the 1951 amendatory
act, as both date of passage and date of approval place it as
a prior enactment subject to repeal by a later enactment. Cases
cited supra; Community Public Service Co. v. James, 166 S.W.2d
395 (Tex.Civ.App. 1942, error ref.). Furthermore, since Sec-
tion 2 of H.B. 6 is later in position in the bill than Article
14.11 of the Election Code, Section 2 would prevail over Arti-
cle 14.11 in case of conflict between them. Stevens v. State,
supra.

In this state of affairs it is impossible to say what
pay rate the Legislature intended to prevail in general and spe-
cial elections.

A similar interpretation problem was before the court
in Ex parte Sanford, 289 S.W.2d 776 (Tex.Crim. 1956). In that
case the court had to rule on the effect of the provision in
Section 2 of H.B. 6 saving from repeal the penal provisions of

the existing law. The relator had been indicted on charges which were a violation of Article 14.04 of the Election Code, the penalty for which was set out in Article 14.06, and were also a violation of Article 265 of the Penal Code. Articles 14.04 and 14.06 of the Election Code had made changes in the existing law in conflict with Article 265 of the Penal Code. The court held that Article 265 was saved from repeal by the express provision of Section 2 of H.B. 6, but this saving clause had not produced a repeal of the conflicting provisions in Articles 14.04 and 14.06. Both were existing statutory provisions. Being in irreconcilable conflict, neither could be given effect.

In Leal v. Burger, 299 S.W. 497 (Tex.Civ.App. 1927), an act passed at the same session as the 1925 Revised Civil Statutes and preserved by a saving clause similar to the one in Article 14.11, was given controlling effect over conflicting code provisions. Also see Johnson v. Martin, 75 Tex. 33, 12 S.W. 321 (1889). We do not believe the fact that Ex parte Sanford was a criminal case or that the saving clause referred to enactments of prior Legislatures rather than of the same Legislature, affords a ground for distinguishing these cases. Since Ex parte Sanford is the later expression and involves some of the same provisions we are considering, we are disposed to follow its holding. One possible distinction between the Sanford case and the matter here under consideration is that we have the further question of whether the repeal of Title 50 and all amendments thereto, contained in Section 2 of H.B. 6, nullified the effect of the saving clause in Article 14.11 insofar as it pertained to the 1951 act amending Article 2943. In view of the specific provision in Article 14.11 saving all acts of the Regular Session of the 52nd Legislature, we are not able to say that this act was repealed by Section 2. Our conclusion is that both Article 3.08 of the Election Code and Article 2943 of the Revised Civil Statutes, as amended in 1951, are a part of the statute law of this State, and insofar as they are in conflict neither can be given effect. Ex parte Sanford, supra; Walsh v. McConnell, 273 S.W. 833 (Tex.Com.App. 1925); Hamrick v. Simpler, 127 Tex. 428, 95 S.W.2d 357 (1936); Att'y Gen. Op. WW-152 (1957). As a result, there is no enforceable statutory provision fixing or limiting the rate of pay in these elections, and it therefore becomes the duty of the commissioners court to fix the compensation of the election officers at a reasonable amount. Att'y Gen. Op. V-749 (1948). What constitutes reasonable compensation is a fact question and the commissioners court has the discretion to determine the rate of pay on the basis of all the facts.

The provisions of Articles 3.08 and 2943 are nullified only insofar as they are in conflict. Article 3.08 controls the compensation rate in primary elections, since there is no other statute in conflict with this provision.

Hon. Lloyd G. Rust, Jr., page 5 (WW-445)

The foregoing discussion pertains to pay of election officers where paper ballots are used. Section 24 of Article 7.14 of the Election Code provides for the rate of compensation of officers in general, special and primary elections at polling places where voting machines are used, as follows:

"* * * For their services election officials and employees shall be paid a sum to be set by the authority charged with holding the election or primary election, but not less than the amount set now by law and not more than Ten Dollars ($10) per day, provided, however that no election official shall be paid more than the pro-rata part of two (2) hours overtime after the polls are closed. * * *"

This statute applies to a specific type of service. By the settled rule of construction, it is treated as an exception to the general law on pay of election officers. 39 Tex. Jur., Statutes, Secs. 81 and 82. A specific act is not repealed by general legislation unless the intent to repeal it is clearly manifested. Within the Election Code itself, Section 24 of Article 7.14 is the controlling statute where voting machines are used. The 1951 act amending Article 2943 did not expressly repeal any law, either general or special, and is not to be taken as an implied repeal of this special statute. Consequently, Section 24 of Article 7.14 remains in full force and controls the pay of election officers where voting machines are used.

In Opinion V-1528 (1952), this office held that officers in precincts where voting machines are used may receive a maximum of $10 for a 10-hour day, with additional pay at the maximum rate of $1 per hour for time worked in excess of 10 hours while the polls are open and for a maximum of two hours after the polls are closed.

Adverting to the rate of compensation which the commissioners court may allow in the absence of a controlling statute, we have said that it may allow a reasonable compensation based on all the facts. The legislative expressions fixing a maximum of $10 for a 10-hour day in primary elections and in elections where voting machines are used may be taken as a guide to the maximum amount the commissioners court should allow for a 10-hour day.

You have also asked what is the maximum pay of election officers who work less than 10 hours. The statutes provide for overtime compensation at a maximum hourly rate of one-tenth the maximum rate for a 10-hour day, but none of the statutes in express terms set a rate of pay for officers who work less than 10 hours. We are of the opinion that their pay is not limited to this hourly rate and the authority fixing

their pay may allow them a reasonable compensation, within the maximum for a full day's work, in the light of all the circumstances. For example, a person who holds himself in readiness to work as many hours as may be required of him is not necessarily limited to pay for the number of hours actually spent at the polls. Members of special canvassing boards to count absentee ballots may be able to perform their duties in a few hours' time, but their pay is not restricted to the hourly rate for the time actually consumed in counting the ballots. The pay of all such election officers is within the sound discretion of the authority fixing their compensation but may not exceed the maximum for a full day's work.

## SUMMARY

Article 3.08 of the Election Code, providing for compensation of judges and clerks in general, special and primary elections at a maximum of $10 for a 10-hour day, impliedly repeals conflicting provisions in Article 3.02 of the Election Code, fixing the compensation in special elections at $5 a day. However, with respect to general and special elections Article 3.08 is in conflict with Article 2943, R.C.S., as amended in 1951, which provides for maximum compensation of $8 for a 10-hour day and which was saved from repeal by Article 14.11 of the Election Code. Both Article 3.08 and Article 2943 are unrepealed statutes and neither can be given effect insofar as they are in conflict. There being no enforceable statute fixing the pay of judges and clerks of general and special elections serving in precincts where paper ballots are used, the commissioners court has authority to fix their pay at a reasonable rate.

Insofar as Article 3.08 of the Election Code applies to primary elections, it is not in conflict with any other statute and controls the pay of primary election officers in precincts where paper ballots are used.

Section 24 of Article 7.14 of the Election Code fixes the compensation of general, special and primary election officers in precincts where voting machines are used at a maximum of $10 for a 10-hour day. Being a statute of special application, it is treated as an exception to the general provisions of Articles 3.08 and 2943 and controls in the elections to which it applies.

The $10 maximum fixed by the Legislature in primary elections and in elections where voting machines are used may be taken as a guide to the maximum which the commissioners court should observe in fixing pay of officers in precincts using paper ballots.

The pay of election officers who work less than 10 hours is within the discretion of the authority fixing their compensation but may not exceed the maximum for a full day's work.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Mary K. Wall*

Mary K. Wall
Assistant

MKW:dhs

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

J. C. Davis, Jr.
James H. Rogers
Wayland C. Rivers, Jr.

REVIEWED FOR THE ATTORNEY GENERAL
BY: W. V. Geppert